Defendant appeals and complains of the refusal of its motions for judgment notwithstanding the verdicts for the plaintiffs, in their suit for damages for injuries to the wife-plaintiff, sustained in alighting from a passenger train in the railway station at Scranton, Pennsylvania. Mrs. Pierce had become a passenger at Syracuse, New York; her destination was Scranton; she changed cars at Binghamton, New York, and boarded a fifteen car train which made no stops between Binghamton and Scranton. The train arrived at about 3:35 A.M., February 19, 1945. The car in which she was a passenger is described in the record as ". . . an old fashioned, open vestibule type, with one light in the center of the ceiling of the vestibule exit."
Mrs. Pierce was about thirty-six. Some 20 years before, her right leg had been amputed five inches above the knee. She wore a wooden leg "supported by a body brace" and on the trip to Scranton was accompanied by her two and one-half year old child and carried a suit case and a pocketbook handbag. She asked a passenger who was leaving the train at Scranton "if she would mind carrying my little boy off and I would help her with her bag and she said yes, and she carried him down the steps." Mrs. Pierce was asked, "Q. And did you carry her bag? A. I carried her bag under my arm. I carried my own suitcase. I carried about two pocketbooks up on my elbow. Q. You had two pocketbooks? A. Up at my elbow; one bag in my hand, the other bag in under my arm, and I went down along the railing. Of course, when I slipped everything went." She testified that the passenger with plaintiffs' son preceded her down the steps to the station platform; that when she (the plaintiff) started down by placing her left foot on the first step she slipped and fell to the station platform where her sister and her husband, who had come to meet her, picked her up. *Page 405 
An effort was made to support a contention that there was grease on the step and that it caused her to fall. She testified, "I slipped on something soft and very slippery." Neither the plaintiff nor any other witness saw what she slipped on, none saw any grease there. Mrs. Pierce thought there was grease because she slipped and because several days after the accident she noticed a grease spot on the back of the coat which she wore on the night of the fall and which, she assumed, absorbed the grease on the step. If there had been such a deposit of grease on the step sufficiently long for the trainmen to be advised of it, it would have been evidence from which the jury might have inferred negligence, but the evidence is insufficient to support such a finding; the learned trial judge so concluded as we understand his opinion written in disposing of defendant's motions. In passing on the motions he said: "We seriously doubt if this evidence [concerning grease on the steps] in itself is sufficient to warrant the finding plaintiffs contend . . . Its existence cannot be left to conjecture." Conjecture is not enough. The burden of proof was on the plaintiff who did not produce sufficient evidence on the subject: compare DeReeder v. Traveler's Insurance Co., 329 Pa. 328,333, 198 A. 45; Stauffer v. Rwy. Express Agency, Inc.,355 Pa. 24, 47 A.2d 817.
The learned trial judge thought that the defendant failed in its duty to render assistance to Mrs. Pierce in alighting from the train. We think there is not enough evidence on the subject to support the verdict on that ground. The evidence is that when she boarded the train at Binghamton she was assisted by the trainman at the car which she boarded and by a soldier.* She did not *Page 406 
advise the trainman who put her valise "right at the top of the platform" at Binghamton that she would need or desired assistance in leaving the train at Scranton nor did she notify the trainman who took her ticket between Binghamton and Scranton that she desired assistance in leaving the train. It is of course true that if "a carrier accepts as a passenger a person known to be affected by either physical or mental disability, whereby the hazards of travel are increased, it must exercise a greater degree of care for the safety of such passenger than is ordinarily required." Jameitis v.Wilkes-Barre Railroad Company, 277 Pa. 437, 121 A. 317. But the evidence does not show that it was apparent to the trainmen that she would require assistance in leaving the train. There is evidence she walked with a limp, but that in itself is not sufficient. There is no evidence that would have led the trainman to think Mrs. Pierce was handicapped with a wooden leg. There was nothing to show that the trainman who took her ticket during the trip to Scranton would observe that she was any different from any other seated passenger. If she required assistance, she should have informed a trainman of the need before reaching her destination: compare Baron v. Wilkes-BarreCo., 71 Pa. Super. 103; Low v. Harrisburg Rwy. Co.,290 Pa. 365, 368, 138 A. 852.
Judgments reversed and here entered for defendant.
* "Q. Will you please tell us whether or not you were given any aid in Binghamton by anybody other than an employee of the company? A. Yes. The soldier sitting at the station opposite to me saw the predicament I was in and trying to keep my little boy awake. Q. We are not interested in what the soldier saw but what he did. A. He picked up the baby and carried him up the platform and placed him on the platform and stood in the doorway until the trainman helped me up the steps and I took him and sat him in the seat. Q. Who carried your valise into the car, I mean. A. The trainman carried it up the steps and put it right at the top of the platform, and I took the second seat in there, second or third, in that neighborhood. Q. Did the trainman help you up the steps? A. Yes; as far as his arm reached. I only had to get up the platform. Q. One step up to the platform? A. Yes; he helped me all the way up to the platform." *Page 407