**Savitski v. Borough of Mount Carmel**

*Charles H. Saylor,* for plaintiff.

*Joey A. Storaska,* for defendant Borough of Mount Carmel.

*David L. Schwalm,* for defendant Township of Mount Carmel.

*Fred J. Wiest,* for additional defendant Mount Carmel Water Company.

KREHEL, *P.J.,* March 30, 1984—Before the court is defendant Township of Mount Carmel's motion for summary judgment and plaintiff's motion to strike defendant township's motion for summary judgment. Plaintiff, defendant Township of Mount Carmel, and defendant Borough of Mount Carmel have filed Briefs and presented oral arguments, all of which have been duly considered.

## I. PLAINTIFF'S MOTION TO STRIKE DEFENDANT TOWNSHIP'S MOTION FOR SUMMARY JUDGMENT

Pa.R.C.P. 1035, provides for the filing of a motion for summary judgment within such time as not to delay the trial. While plaintiff argues that it is prejudiced by the consideration of the motion for summary judgment filed herein because of the time spent and expense incurred already in this matter and because further delay may possibly cause the

deterioration of witnesses' recollections, the only reason for denying the motion for summary judgment is that it would delay the trial in this matter.

In B. Bornstein and Son, Inc. v. Bethlehem Steel Corporation, 4 D.&C. 3d (1978) a motion for summary judgment filed approximately one month before the anticipated start of trial was held to have been timely filed. Here, the motion for summary judgment was filed nearly three months before the anticipated start of trial. It was filed in time to be presented for oral argument nearly seven weeks before the anticipated start of trial. Finally, defendant Township of Mount Carmel did not seek to use its motion as a basis for postponing the scheduled pretrial conference herein.

Accordingly, we conclude that the motion for summary judgment has been timely filed.

## II. THE MOTION FOR SUMMARY JUDGMENT

Defendant township's motion presents essentially two general questions; (1) whether it owned a duty to plaintiff to provide for fire protection or (2) whether it assumed such a duty.

### A. The Standard For Evaluation

It is well established that a court reviewing a motion for summary judgment is to accept as true all well-pleaded facts in the nonmoving party's pleadings, as well as the admissions on file, giving to them the benefit of all reasonable inferences to be drawn therefrom. The record must be reviewed in a light most favorable to the nonmoving party. All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment. See Mattia v. Employers Mutual Companies, 294 Pa. Super. 577,

579, 440 A.2d 616, 617 (1982). See also, Ritmanich et al. v. Jonnel Enterprises, et al., 219 Pa. Super. 198, 203, 280 A.2d 570, 573 (1971).[1]

## B. The Duty Imposed

In Lacey Park Volunteer Fire Company v. Board of Supervisors of Warminster Township, 27 Pa. Commw. 54, 365 A.2d 880 (1976), the court interpreted 53 P.S. §65704 to imply both the power and the responsibility of a second class township to organize an effective fire protection service for the benefit of its inhabitants. While we have some question as to whether the statute goes beyond creating the authority of a township to provide fire protection for its citizens, we are bound by the Commonwealth Court's interpretation.

It follows a fortiori that defendant township had the duty to provide adequate fire protection to plaintiff. It is for a jury to determine whether that duty has been breached and whether any such breach contributed to the destruction of plaintiff's coal breaker.

## C. The Duty Assumed

In his complaint.[2] plaintiff alleges in Paragraphs six and 14 as follows:

---

1. Because we are satisfied that, as a matter of law, defendant township had a duty to provide adequate fire protection for the benefit of plaintiff and that, in any event, plaintiff's pleadings, as well as admissions of record by defendant township, establish that defendant township assumed such a duty, it is unnecessary to pass upon the applicability of Nanty-Glo v. American Surety Co., 309 Pa. 236, 163 A. 523 (1932) to this matter.

2. We again note that we must accept all of plaintiff's well-pleaded facts as true for our purposes herein.

"6. At all times material hereto, the Defendant, the Township of Mount Carmel, had undertaken to provide fire protection services therein, under its municipal powers, by and through the operation and maintenance of a water system, including pipelines, water mains, valves, conduits and hydrants located in the Village of Atlas and in the vicinity of the Savitski Brothers breaker.

14. Defendant, Township of Mount Carmel, was negligent, reckless and careless in:

(a) Failing to provide and maintain an adequate water system for fire fighting purposes;

(b) Failing to keep the water systems and pipes, mains, valves, conduits, hydrants and other components thereof, in proper working condition and good repair;

(c) Failing to maintain sufficient hydrant water pressure and flow;

(d) Failing to replace or remove defective, inadequate or corroded pipes, mains, valves, conduits and hydrants;

(e) Failing to inspect and test the adequacy of the system, or to discover the defects;

(f) Failing to notify the Plaintiff of the inadequacy of the water system for fire fighting purposes, its disrepair, and the insufficiency of the hydrant water pressure and flow;

(g) Failing to advise the fire fighters of the said deficiencies in the water system and hydrant water pressure and flow;

(h) Failing to keep all components of said water system readily accessible and operable for fire fighting purposes of all times;

(i) Imposing undue restrictions on fire fighting assistance from fire departments outside the municipality;

(j) Failing to use due care in the operation and maintenance of the water system;

(k) Otherwise failing to exercise due care under all the circumstances."

In their reply to new matter of defendant township of Mount Carmel, plaintiff alleged in Paragraph four (4) as follows:

"4. Denied. The Township of Mount Carmel established said fire protection system; it had a nondelegable duty to keep and operate the same in proper and adequate condition and to exercise control thereover. By way of further answer, the Township of Mount Carmel did exercise control over said system, and it had the right and obligation to do so."

Further, defendant Borough of Mount Carmel in its answer to plaintiff's complaint alleged in Paragraph 21[3] as follows:

"21. Defendant, the Borough of Mount Carmel, avers that if the Plaintiff sustained damages as alleged, then said damages resulted from the conduct, actions, and negligence of the Defendant, the Township of Mount Carmel, which Defendant did prohibit or unduly restrict the rendering of fire fighting assistance within the Township of Mount Carmel by fire fighting organizations situate in the Borough of Mount Carmel."

Plaintiff did not retreat during the discovery process herein. In response to defendant township's interrogatories filed on September 30, 1981, plaintiff asserted the following:

"41. State the factual basis for Plaintiff's contention in Paragraph 6 of the Complaint that the Township of Mount Carmel undertook to provide fire protection services in the Village of Atlas.

---

3. We must also accept the well-pleaded facts of defendant borough, a nonmoving party in this matter, as true.

Answer: Plaintiff relies upon the fact that a fire hydrant water system was present in the Township of Mount Carmel; the relationship maintained between the fire departments of the Township of Mount Carmel, and; the relationship maintained between the Township of Mount Carmel and the Borough of Mount Carmel and Roaring Creek Water Company. In addition, Plaintiff relies upon the statutory duty under which the Township of Mount Carmel operates.

43. State specifically the factual basis which supports the Plaintiff's allegation in Paragraph 14 that the Township of Mount Carmel (a) failed to provide and maintain an adequate water system for firefighting purposes; (b) failed to keep the water system and pipes, mains, valves, conduits, hydrants and other components thereof in proper working condition; (c) failed to maintain sufficient hydrant water pressure and flow; and (d) the portions of the system which were defective and inadequate or corroded; (e) that the Township failed to replace or remove defective, inadequate or corroded components; (f) failed to inspect or test the inadequacy of the system or discover defects; (g) failed to notify the plaintiff of the inadequacy of the water system or its disrepair and the insufficiency of the hydrant water pressure and flow; (h) failed to advise firefighters of any deficiencies; (i) failed to keep all components of the water system readily accessible and operable for firefighting purposes; (j) imposed undue restrictions on firefighting assistance from fire departments outside the municipality; (k) failed to use due care in the operation and maintenance of the water system; (l) otherwise failed to exercise due care under all circumstances.

Answer: As to allegations (a) through (g), Plaintiff relies upon the following facts: the water and

fire protection system in question was not adequate nor kept in proper repair inasmuch as it failed on this occasion; the water system, especially on Saylor Street, is antiquated, below minimum standards, decaying and in overall poor condition; by observation, the water volume, pressure and flow were at or near zero at the time of the fire. As to allegations (h) through (l), Plaintiff relies upon the following facts: members of various fire departments of the Borough of Mount Carmel were prepared to respond to the fire in question, but were forced to wait for a call for assistance from the Township of Mount Carmel; the fire fighters, upon arriving at the scene, initially attached their fire hoses to the fire hydrant at the corner of Saylor and Mulberry Street; the Township of Mount Carmel, its officials agents, and employees, were put on notice of the deficiencies of this particular hydrant; a valve capable of increasing water pressure to the system in question was inaccessible at the time of the fire.

In its answer of plaintiff to request for admissions of defendant township of Mount Carmel filed on September 6, 1983, plaintiff asserted as follows:

26. . . . . While Admitted that the dispatcher for the Borough of Mount Carmel is not an employee of the Township of Mount Carmel, said dispatcher follows policies and procedures set forth by said Township, and was an agent or servant thereof.

42. . . . . by information and belief the Plaintiff alleges that the Township Fire Companies continually notified the Board of Supervisors of the Township of Mount Carmel of the insufficient water pressure in the Village of Atlas, together with the insufficient water pressure located in the Township of Mount Carmel."

While defendant township has referred us to record evidence exculpatory as to it, we have neither

been cited to nor discovered any admissions of record made by plaintiff which would negate their foregoing allegations.

To the contrary, the record reflects several items implicating defendant township in the fire protection provided to plaintiff.

Marian Muldowney, a dispatcher for defendant borough, testified that she followed a dispatch procedure requested by defendant township through Ronald F. Startzel, the Chairman of its Board of Supervisors, by letter of April 12, 1978[4] While it is not clear whether the procedure set forth in the letter was followed on May 4, 1978, the date of the fire herein, this letter had remained posted in the dispatcher's area as of that date.[5]

Similarly, Blaine Handerhan, a policeman in defendant borough, testified to certain dispatch procedures which had been established by defendant township.[6] Handerhan further testified that he was not sure who within defendant township set the dispatch policies because they were a "little unorganized."[7] Finally, Handerhan testified that there was a mutual aid pact in effect between defendant township and defendant borough.[8]

In addition to the foregoing evidence that defendant township had involved itself in fire protection for the Village of Atlas where the fire in question occurred, we also have the testimony of Ronald F.

4. See Transcript of Muldowney's deposition, p. 14.

5. See Transcript of Muldowney's deposition, p. 34. We again note that all areas of doubt must be resolved adversely to defendant township.

6. See transcript of Handerhan's deposition, p. 16.

7. See transcript of Handerhan's deposition, p. 18. Again, all areas of doubt must be resolved against Defendant Township.

8. See transcript of Handerhan's deposition, p. 20.

Startzel, who, as previously noted, was the chairman of the board of supervisors of defendant township. Startzel testified that he had made mention to the firemen and chiefs within defendant township that there was to be no request for mutual aid assistance until all fire companies were committed to a disaster.[9] Startzel further testified that defendant township paid Workmen's Compensation premiums and purchased equipment for the volunteer fire companies within its territory.[10] Startzel also testified that defendant township made a one-time contribution of $2,000 to each of those volunteer fire companies.[11] Finally, Startzel testified that defendant township paid a fee to the water company supplying water to the Village of Atlas[12] so that there would be water available to put a fire out.[13]

Of course, all of the foregoing "facts" favorable to plaintiff must establish that defendant township assumed a duty with respect to fire protection for plaintiff if plaintiff is to prevail on this motion for summary judgment. We are satisfied that they do.

As the court observed in Kline Plastics, Inc. v. Roaring Creek Water Company, 50 N.L.J. 132, 135 (1978) borrowing from Doyle v. Pittsburgh Water Co., 414 Pa. 199, 199 A.2d 875 (1964), the erection

---

9. See transcript of Startzel's deposition, p. 22. While defendant township has argued and pointed to evidence that Startzel's recommendations were not binding on and, in fact, often were not followed by the volunteer fire companies, we again note that the record to date must be read as a whole in a light most favorable to plaintiff.

10. Id, p. 37.

11. Id, p. 38.

12. Apparently, the actual supplier of water changed three times in the 1977-78 period. It appears that at the time of the fire herein, the supplier was defendant borough, itself.

13. See transcript of Startzel's deposition, pp. 38-39.

of fire hydrants close to dwellings insures those inhabitants against an invading conflagration. Here, defendant township admittedly made payments to provide for the maintenance of fire hydrants in the Village of Atlas so that there would be water available to put a fire out. When defendant township undertook by financial contribution to provide for the maintenance of fire hydrants near plaintiff's coal breaker, it assured them that they need take no further independent action to protect themselves and that there would be reasonable care in the maintenance and repair of those hydrants. See Printed Terry Finishing Company, Inc., v. City of Lebanon, 247 Pa. Super. 277, 288, 372 A.2d 460, 465 (1977). It is for a jury to determine whether that reasonable care has been exercised and, if not, the degree of culpability attibutable to defendant township.

While defendant township appears to be correct that there have been no cases imposing liability upon a municipality which did not own its water system, it is clear that municipal ownership is not the touchstone for determining liability. Williams By Williams v. Lewis, _____ Pa. Super. _____, 466 A.2d 682 (1983), cited to us by defendant township is clearly distinguishable from the facts presently before us. While the court found that the municipality therein owed no duty to a boy injured on a vacant lot, it did so on the basis that the municipality had not assumed any duty to the boy rather than on the basis that the vacant lot was privately owned. Quite to the contrary, the court distinguished the situation before it from that in Fairview v. A.A. Gallagher Warehousing Corp., 11 D.&C. 3d 292 (1979) where it was held that a municipality had assumed a duty to protect persons such as the plaintiff therein who was injured in a privately owned warehouse. We be-

lieve that here, as in Gallagher, Defendant Township has assumed a duty to its residents, in this case, to provide for fire protection.

In addition to the provisions for fire hydrant maintenance, the record established to date reveals that defendant township involved itself in the method by which fire companies were dispatched to fires within its jurisdiction. Section 323, Restatement (second) of Torts[14] is the well-established law of Pennsylvania. See Morena v. South Hills Health System, 501 Pa. 634, 641, 462 A.2d 680, 684 (1983).

By sending a letter to the Borough of Mount Carmel, defendant township undertook to render fire protection services to persons within its jurisdiction, including plaintiff herein. Plaintiff has placed in issue whether the dispatch system negligently contributed to the destruction of the coal breaker. Defendant borough's dispatcher has testified that she followed defendant township's letter and that, while she was not on duty when plaintiff reported the fire herein, the letter was posted in the dispatch office. It is for a jury to determine whether the dispatcher acted negligently at the time in question, whether defendant township becomes liable by virtue of a principal-agent relationship with defendant bor-

---

14. §323. Negligent Performance of Undertaking to Render Services

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

ough, and/or whether the establishment of the dispatch system itself was the negligent causation of the destruction of plaintiff's breaker.

Accordingly, we enter the following

### ORDER

And now, this March 30, 1984, it is hereby ordered, adjudged, and decreed that both plaintiff's motion to strike defendant township's motion for summary judgment and defendant township's motion for summary judgment be denied.