# Cramer v. Laurelwood Cemetery Company

*Robert C. Lear,* for plaintiffs
*Karl H. Kline,* for defendants

O'BRIEN, *J.,* April 20, 1987 — Plaintiffs Jane Cramer and Chester Cramer, her husband, commenced the instant action against Laurelwood Cemetery Company and salesman Daniel Nappo to recover for injuries sustained by Jane Cramer when she slipped and fell on a macadam road at the Laurelwood Cemetery on February 20, 1984. Subsequently, Cemetery Sales Systems Inc., the employer of Daniel Nappo was joined as an additional defendant. At the conclusion of plaintiffs' case, all defendants presented motions for compulsory nonsuit against plaintiffs which were granted by the court. Post-trial motions were timely filed by plaintiffs seeking removal of the nonsuit and a new trial. After briefs and argument, plaintiffs' motion is presently before this court for disposition.

A judgment of nonsuit is properly entered if a plaintiff has not introduced sufficient evidence to establish the elements necessary to maintain an action. Morena v. South Hills Health System, 501 Pa.

634, 462 A.2d 680 (1983). Plaintiffs however, must be given the benefit of all evidence favorable to them together with all reasonable inferences arising from it, and any conflict in the evidence must be resolved in their favor. Barney v. Forados, 305 Pa. Super. 404, 451 A.2d 710 (1982). It is the duty of the trial judge to determine, prior to sending the case to the jury whether or not plaintiff has met his burden. Morena v. South Hills Health System, supra.

Plaintiffs' evidence and the reasonable inferences arising therefrom indicate the following. On February 20, 1984, plaintiff Jane Cramer met with Daniel Nappo, an employee of Cemetery Sales Systems Inc., at the office of the Laurelwood Cemetery for the purpose of purchasing a cemetery plot. After completing the purchase, Mr. Nappo asked Mrs. Cramer if she wanted to see the plot. She said that she would and because it was a beautiful sunny day, they argeed to walk to the site. They proceeded along a road which gradually inclined through the cemetery. They then left the road to walk across the grass to where the plots were located. Both the grounds and the road were free of snow. After viewing the site, they went back to the road, but when Mrs. Cramer stepped on to the road, her feet slipped out from under her and she landed on the ground, fracturing a hip.

Anti-skid material — "a sort of screening from a quarry" which is comprised of "stones and a mixture of finer and little heavier material," had been applied to the road. As its name suggests, its purpose was to eliminate skidding and provide traction for vehicular traffic. The anti-skid material was approved by the Commonwealth of Pennsylvania for this purpose. Plaintiffs allege that defendants were negligent for failing to clean up the anti-skid material from the cemetery road, claiming that it constitut-

ed a dangerous condition to the cemetery's visitors.

Plaintiffs' suit seeks to impose liability against Laurelwood Cemetery Company as a possessor of land for violating the standard of care owed to its business invitees. The elements which must be proved before such liability can be imposed are defined by the Restatement (Second) of Torts §343 (1965) which provides as follows:

"§343. Dangerous Conditions Known to or Discoverable by Possessor.

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

Plaintiffs have failed to meet subsections (a) and (c) of the above Restatement provision and therefore defendants' motion for nonsuit was properly granted. The issue raised regarding subsection (a) is whether defendants had constructive knowledge that the presence of anti-skid materials on the cemetery roads presented an unreasonable risk of harm to its business invitees.

In Moultrey v. Great A & P Tea Co., 281 Pa. Super. 525, 422 A.2d 593 (1980), the court stated the following:

"[T]he mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's

duty of care to his invitees, nor raises a presumption of negligence. Therefore, in order to impose liability on a possessor of land, the invitee must present other evidence which tends to prove that the possessor deviated in some particular from his duty of reasonable care under the existing circumstances. Logically, the invitee's case-in-chief must consist of evidence which tends to prove either that the proprietor knew, or in the exercise of reasonable care ought to have known, of the existence of the harm-causing condition." (Citations omitted.)

Although Laurelwood Cemetery was aware of the presence of the anti-skid material on its roads, plaintiffs have failed to present evidence which established that defendant knew or had reason to know that this material posed an unreasonable risk to pedestrian traffic. Plaintiffs' sole evidence of Laurelwood's knowledge was presented through the testimony of Ronald Smith, the superintendent of Laurelwood Cemetery. Mr. Smith testified that he was aware that anti-skid materials were present on cemetery roads, having applied it in the winter of 1983-84. Plaintiffs, however, did not ask Mr. Smith whether he knew that the anti-skid materials presented an unreasonable risk that Laurelwood Cemetery visitors would slip and fall. Plaintiffs therefore did not establish that defendants had knowledge of any unreasonable risk as required by section 343(a) of the Restatement. We note that due care presupposes one's exercise of judgment which necessarily requires relevant knowledge. See Morena v. South Hills Health System, supra. A possessor of land is not an insurer of his business invitees, and plaintiffs' evidence must establish some degree of negligence on defendant's part in order to recover. Winkler v. Seven Springs Farm, 240

Pa. Super. 641, 359 A.2d 440 (1976).

Further, plaintiffs have not satisfied section 343(c) which requires proof that defendant failed to exercise reasonable care to protect his invitees from danger. The question presented before us is whether the standard of reasonable care requires property owners to remove residual anti-skid material from their roads after each snowfall. In other words, whether defendants owed a duty to their business invitees to remove the anti-skid material after each snowfall. Generally, a possessor of land only owes a duty to protect invitees from foreseeable harm. Currender v. Fitterer, 503 Pa. 178, 469 A.2d 120 (1983). See also Restatement (Second) of Torts §§341A, 343 and 343A. Furthermore, liability depends on antecedent probability, not the mere possibility of harmful results. Merritt v. City of Chester, 344 Pa. Super. 505, 496 A.2d 1220 (1985). The general test of liability is whether the injury could be foreseen by an ordinarily intelligent person as the natural and probable outcome of the act complained of. Id. The question then upon which liability revolves is whether an ordinarily intelligent person would perceive residual anti-skid material on area roads as a potential danger which would *probably* result in pedestrian injury, thus necessitating immediate clean up after each snowfall.

Testimony by plaintiffs' expert witness, John Henning, a civil engineer who renders road maintenance advice to several Monroe County municipalities indicated to us that the danger of injury to pedestrian traffic on anti-skid material was minimal. When questioned as to the advice he gives regarding the frequency with which anti-skid material should be cleaned up, Mr. Henning testified as follows:

"Q. Do you know of any municipalities in the Poconos that clean all of their materials off the roads in mid-February?

A. No, I don't.

Q. None at all?

A. I don't know of any that do it in mid-February.

Q. Any of the municipalities that you serve as an adviser to? Do any of those?

A. I really don't know what their street cleaning procedures are. Most of the townships, a number of them, do not have street sweeping equipment. They rent it periodically.

Q. Did you ever advise them, 'you better go out there and clean it. The snow just cleared yesterday'? Did you do anything like that?

A. No. sir.

Q. Certainly, there can be pedestrian traffic on any of those roads in a township, can't there?

A. It's quite possible."

Since Mr. Henning, a qualified expert, did not perceive a foreseeable danger to pedestrians from anti-skid material left on roads, we cannot impose such foreseeability on the "ordinarily intelligent person," the standard which defendants must meet. The fact that none of the municipalities in Monroe County regularly clean up anti-skid material applied to their roads would seem to support Mr. Henning's conclusion with respect to the minimal risk such materials pose to pedestrians. We believe that a standard, as proposed by plaintiffs, requiring possessors of land to clean up anti-skid material after every snowfall is unreasonable, as unduly burdensome compared to the minimal risk of injury. The amount of care demanded by the standard of reasonable care must be in proportion to the apparent

risk. Treadway v. Ebert Motor Co., 292 Pa. Super. 41, 436 A.2d 994 (1981).

Since we have concluded that plaintiffs failed to meet their burden of proof for establishing liability on the part of Laurelwood Cemetery Company, there can be no liability on the part of defendant salesman and his employer. In fact, the testimony of wife plaintiff exonerated the salesman from any blame.

## ORDER

And now, this April 20, 1987, plaintiffs' motions for post-trial relief are denied.