FIREMAN'S FUND INS. CO., a/s/o The Commonwealth of Pennsylvania, Plaintiff,

v.

XEROX CORPORATION, Defendant.

No. 1:96–CV–1613.

United States District Court, M.D. Pennsylvania.

Oct. 30, 1998.

Miles A. Jellinek, Philadelphia, PA, Kevin J. Hughes, Steven K. Gerber, Cozen & O'Connor, Philadelphia, PA, for Plaintiff.

Thomas J. Sweeney, Eckert Seamans Cherin & Mellott, Pittsburgh, PA, John E. Hall, Eckert Seamans Cherin & Mellott, Pittsburgh, PA, Julie Fields Sweeney, Eckert Seamans Cherin & Mellott, Pittsburgh, PA, for Defendant.

## MEMORANDUM

CAPUTO, District Judge.

This subrogation action arises out of a fire in the Commonwealth's Transportation and Safety Building in Harrisburg. Before the Court is defendant's motion for summary judgment (Doc. No. 86) on plaintiff's claims under strict products liability (count I), breach of express warranty (count II) and negligence (count III). Because I find there are no genuine issues of material fact as to plaintiff's strict liability claim and breach of express warranty claim, defendant's motion for summary judgment on counts I and II will be granted. However, because I find there are genuine issues of material fact as to plaintiff's negligence claim, defendant's motion for summary judgement on count III will be denied.

## BACKGROUND

On June 27, 1987, the Commonwealth purchased a Xerox 1090 Model photocopier manufactured by defendant. In June 1993, the Commonwealth and defendant entered into a service contract under which defendant was responsible for the maintenance and service of the photocopier. On June 16, 1994, the Commonwealth's Transportation and Safety Building was seriously damaged by fire. Plaintiff provided insurance coverage to the Commonwealth for the damage caused by the fire. Plaintiff subsequently brought this subrogation action against defendant, alleging that the 1090 model photocopier in room 607 of the Transportation and Safety Building started the fire that damaged the building.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that the moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir.1994), *cert. denied*, 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 329, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.1988); *Continental Ins. Co. v. Bodie*, 682 F.2d 436 (3d Cir.1982). Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514. Mere conclusory allegations or denials

taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990). Rule 56 requires the entry of summary judgment, after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323, 106 S.Ct. 2548.

## DISCUSSION

## I. PLAINTIFF'S STRICT PRODUCTS LIABILITY CLAIM

Plaintiff alleges in its complaint that the 1090 model photocopier was unreasonably dangerous as designed and manufactured by defendant and thus defendant is strictly liable under § 402A of the *Restatement of Torts,* Second (1965). (Compl.¶ 18, 19). Defendant moves for summary judgment on plaintiff's strict liability claim on the basis that under a risk-utility analysis, the Xerox 1090 copier was not unreasonably dangerous as a matter of law. (Mot. for Sum. Judg., ¶ 3). Pennsylvania has adopted the Restatement (Second) of Torts as the law of strict products liability in Pennsylvania. *Surace v. Caterpillar, Inc.,* 111 F.3d 1039, 1043 (3d Cir.1997) (citing *Webb v. Zern,* 422 Pa. 424, 427, 220 A.2d 853 (Pa.1966)). Section 402A of the Restatement provides in relevant part:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer ... is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts (1965). In *Azzarello v. Black Bros. Co.,* the Pennsylvania Supreme Court held that the threshold determination as to whether the product's condition justifies placing the risk of loss on the manufacturer or supplier is a question of law for the court to resolve. 480 Pa. 547, 558, 391 A.2d 1020 (1978). The *Azzarello* court, however, did not articulate the standard for determining whether the risk of loss should be placed on the manufacturer. *Surace,* 111 F.3d at 1044.

In *Surace,* the United States Court of Appeals for the Third Circuit engaged in a lengthy analysis of how strict liability would attach under Pennsylvania law if the Pennsylvania Supreme Court had ever decided the issue. *Id.* In the absence of a Supreme Court decision, the Third Circuit gave "due regard" to the decisions of Pennsylvania's intermediate appellate courts as indicia of how the Supreme Court would decide the matter. *Id.* The Third Circuit determined that Pennsylvania would employ a risk-utility analysis in making the threshold determination as to whether the product's condition justifies placing the risk of loss on the manufacturer or supplier. *Id.* at 1046.

■ A risk-utility analysis is made "by weighing the utility of the product against the likelihood and seriousness of the injury claimed and the availability of precautions which might have prevented the injury in order to reach the ultimate conclusion whether, as a matter of social policy, the risk of loss is appropriately placed upon the supplier of the product." *Riley v. Becton Dickinson Vascular Access, Inc.,* 913 F.Supp. 879, 881 (E.D.Pa.1995). The Pennsylvania Superior Court has identified seven factors (Wade factors) that may be considered in making the threshold risk-utility analysis, including:

> (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole; (2) The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury; (3) The availability of a substitute product which would meet the same need and not be as unsafe; (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too

expensive to maintain its utility; (5) The user's ability to avoid danger by the exercise of care in the use of the product; (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instruction; and (7) The feasibility, on the part of the manufacturer, of spreading the loss of [sic] setting the price of the product or carrying liability insurance.

*Surace*, 111 F.3d at 1046 (citing *Dambacher v. Mallis*, 336 Pa.Super. 22, 50 n. 5, 485 A.2d 408 (1984)) (quoting John Wade, *On the Nature of Strict Tort Liability for Products*, 44 Miss.L.J. 825, 837–38 (1973)). The *Surace* court focused on factors 2, 4 and 5 in determining that the district court erred in granting summary judgment to the defendant. In the present case, the Court will consider the relevant factors in making its risk-utility analysis.

### A. Factor 1: Usefulness and Desirability of the Product

 As a threshold matter, the Court finds that a xerographic machine such as the Xerox 1090 model photocopier is very useful and desirable to the public. Xerox placed over 50,000 "1090" model copiers in the United States between 1985 and 1994. (Exhibits in Sup. of Mot. for Sum. Judg., Doc. No. 87, Exhibit J). Between 1985 and 1994, the 1090 models made approximately 150 billion copies, had been on and running for approximately 276 million hours, and had been plugged in for approximately 1.2 billion hours. *Id.* Although these numbers are approximate, they demonstrate both the utility and desirability of the 1090 model photocopier. I find that the first Wade factor overwhelmingly supports defendant's argument that the 1090 model is not unreasonably dangerous under a risk-utility analysis. The Court must now analyze the second and fourth Wade factors to determine if the risk posed by the 1090 model photocopier outweighs its substantial utility.

### B. Factors 2 and 4: Gravity of the Risk of Harm and Manufacturer's Ability to Eliminate the Harm

The second and fourth Wade factors consider the safety aspects of the product, the likelihood that it will cause injury, the probable seriousness of the injury and the manufacturer's ability to eliminate the unsafe character of the product without impairing its utility. *Id.* Plaintiff argues that the photocopier was "defective and unreasonably dangerous in the absence of: (1) Tag 110 having been performed or an alternative design to prevent the loosening or backing out of pin connectors . . .; and (2) the incorporation of an equipment leakage circuit interrupter (ELCI)." (Aff. of Rodems, Doc. No. 107, Exhibit A at 2). Plaintiff contends that the absence of these safety devices were substantial factors in causing the fire and resultant serious property damage. *Id.* at 2, 3. Plaintiff thus argues that the 1090 model was unreasonably dangerous as designed.

Defendant counters that although there have been 22 reported incidents involving fire in the 1090 model, and ten of those incidents involved the A6 connector, it has never had a reported incident such as the one in this case, where the copier caught fire in the "off" position. (Exhibits in Sup. of Mot. for Sum.Judg., Exhibits O, P and Q). Defendant argues that the 1090 model has a proven safety record as evidenced by the 50,000 "1090" model copiers placed in the United States between 1985 and 1994 without the report of an incident occurring while the machine was in the "off" position. *Id.*, Exhibit J. I find there is not a great likelihood the 1090 copier will cause serious injury. Therefore, the second Wade factor weighs in favor of the defendant. Moreover, since I do not find the copier unsafe, it is unnecessary to address the fourth Wade factor.

### C. Other Wade Factors

The other Wade factors are either neutral or favor defendant in the risk-utility balance. As to the third Wade factor, plaintiff does not contend that there is a substitute product that would meet the same need and not be as unsafe. As to the fifth and sixth Wade factors, plaintiff argues that it could not have

exercised due care to avoid the danger here because of defendant's exclusive maintenance and control over the alleged latent defect in the copier. The *Surace* court found that the fifth Wade factor "informs the decision as to whether the product, as designed, is not reasonably safe when used as intended." 111 F.3d at 1052. I find that the fifth and sixth Wade factors weigh in defendant's favor because plaintiff has presented no evidence to suggest that the 1090 model copier is not operated safely on a daily basis. Finally, the seventh Wade factor is neutral. While defendant could feasibly bear the risk of loss here and spread this loss among its customers, there is no basis to do so under the circumstances of this case.

### D. Summary

Based on the evidence before the Court, I find that the risk of fire from the A6J1 connector of the 1090 model, as alleged by plaintiff, is extremely remote. The almost total lack of reported similar incidents, coupled with the great number of copiers in daily use since 1985, leads me to conclude that plaintiff has failed to show at least a realistic threshold of risk that the 1090 model photocopier was unreasonably dangerous as designed. Examining each of the relevant Wade factors in the light most favorable to the plaintiff, I find that plaintiff's strict products liability claim must fail under Pennsylvania law. Accordingly, defendant's motion for summary judgment on count I will be granted.

## II. PLAINTIFF'S BREACH OF EXPRESS WARRANTY CLAIM

■ Defendant moves for summary judgment on plaintiff's express warranty claim on the basis that the Service Purchase Contract between the parties, effective July 1, 1993, did not create an express warranty to perform mandatory retrofits. The language of the contract provides in relevant part:

10. SERVICES PROVIDED/EXCLUSIONS/REMEDY

A. SERVICES:

1. Xerox will make all necessary adjustments and repairs to keep equipment in good working order.

4. The Customer shall permit Xerox to install, at no cost to the Customer, all retrofits designated by Xerox as mandatory or which are designed to insure accuracy of meters.

(Exhibits in Sup. of Mot. for Sum.Judg., Exhibit G). Plaintiff argues that "because the Service Contract guaranteed that mandatory retrofits would be performed, evidence that Tag 110 was never performed would permit a jury to find that the express warranty had been breached." (Pl.'s Br. in Opp. to Mot. for Sum.Judg., Doc. No. 106 at 24). I disagree.

After reading the Service Purchase Contract between the parties, I find that the contract only relates to the service and maintenance of the 1090 model photocopier. The contract provides that the customer shall permit Xerox to install mandatory retrofits. Thus, plaintiff misconstrues the language of the contract when it argues that the contract guarantees the performance of mandatory retrofits. I find there is no genuine issue of material fact as to whether defendant made an express warranty to plaintiff regarding the installation of retrofits. Accordingly, defendant's motion for summary judgment on plaintiffs express warranty claim (count II) will be granted.

## III. PLAINTIFF'S NEGLIGENCE CLAIM

Defendant moves for summary judgment on plaintiff's negligence claim on two bases: (i) the likelihood of harm was not foreseeable and (ii) plaintiff's expert, Mr. James Rodems, should be precluded from offering his opinion of causation at trial because he does not meet the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In order to succeed on a negligence claim, the plaintiff must establish:

(1) a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct;

(2) a failure to conform to the required standard;

(3) a causal connection between the conduct and the resulting injury; and

(4) actual loss or damage resulting.

*Griggs v. BIC Corp.*, 981 F.2d 1429 (3d Cir. 1992).

 Plaintiff argues that defendant owed a duty of care to the Commonwealth to properly design and manufacture the 1090 model. "Duty in any given situation is predicated on the relationship existing between the parties at the relevant time." *Morena v. South Hills Health Sys.*, 501 Pa. 634, 462 A.2d 680, 684 (Pa.1983). It is undisputed that defendant designed, manufactured and sold the 1090 model to the Commonwealth. The issue is whether it was foreseeable to the defendant that the loosening of connectors in the 1090 model could cause a fire such as the one in this case. Defendant was aware of several incidents involving looseness at the two multi-pin connectors, A6J1/W21P1 and A6J2/W6P1, located at the base of the A6 panel in the 1090 model. (Exhibits in Sup. of Mot. for Sum.Judg., Exhibit J). In fact, defendant designed a mandatory retrofit, Tag 110, to address the looseness at these connectors. *Id.* Plaintiff claims that the loosening or backing out of pin connectors in the A6/J1 or A6/J2 were substantial factors in causing the fire in this case. Therefore, I find there is a genuine issue of material fact as to whether it was foreseeable to the defendant that the loosening of connectors in the 1090 model could cause a fire such as the one in this case.

Defendant moves to preclude the testimony of Mr. Rodems or, in the alternative, to hold an evidentiary hearing to determine if Mr. Rodems's proffered testimony meets the *Daubert* standards. Defendant argues that without the proffered testimony of Mr. Rodems, plaintiff cannot show the necessary causation element of its, negligence claim and thus summary judgment is appropriate.

 The first issue is whether Mr. Rodems's proffered testimony is "scientific evidence" that compels the Court to make a preliminary assessment in an evidentiary hearing of the reasoning and methodology underlying the testimony.[1] *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 743 (3d Cir.1994) (citing *Daubert*, 113 S.Ct. at 2796). The second issue is whether an evidentiary hearing would be appropriate if the Court finds that Mr. Rodems's proffered testimony involves technical or other specialized knowledge rather than scientific evidence. Defendant asserts that this inquiry is not necessary because the Third Circuit applies *Daubert* to all expert testimony and cites recent Eastern District of Pennsylvania and District of New Jersey cases in support of this assertion. (Def.'s Reply Brief, Doc. No. 126 at 6). *See Padillas v. Stork–Gamco, Inc.*, 1997 WL 597655 (E.D.Pa.1997); *Childs v. General Motors Corp.*, 1998 WL 414719 (E.D.Pa.1998); *Stecyk v. Bell Helicopter Textron, Inc.*, 1998 WL 42302 (E.D.Pa.1998); *Finley v. NCR Corp.*, 964 F.Supp. 882 (D.N.J.1996); *Dennis v. Pertec Computer Corp.*, 927 F.Supp. 156 (D.N.J.1996). Plaintiff argues that *Daubert*'s scientific factors do not apply to Mr. Rodems's expert engineering evidence, and thus an evidentiary hearing is not appropriate. Plaintiff cites recent District Court and Circuit Court cases in support of this argument. *See Carmichael v. Samyang Tire, Inc.*, 131 F.3d 1433, 1436 (11th Cir.1997), *cert. granted, Kumho Tire Co., Ltd.*, —— U.S. ——, 118 S.Ct. 2339, 141 L.Ed.2d 711 (1998); *Compton v. Subaru of America, Inc.*, 82 F.3d 1513 (10th Cir.1996); *Maryland Casualty Co. v. Therm–O–Disc, Inc.*, 137 F.3d 780 (4th Cir.1998); *Comer v. Titan Tool, Inc.*, 1995 WL 464949 (S.D.N.Y.1995).

After reviewing the above case law and Mr. Rodems's proffered testimony, I find that Mr. Rodems's testimony is not based on "scientific knowledge."[2] I base my finding

---

1. The Supreme Court suggested four primary inquiries for determining the reliability of a scientific theory or technique: (1) whether it has been tested; (2) whether it has been subject to peer review and publication; (3) its known or potential rate of error; and (4) whether it is generally accepted by the relevant scientific community. *Daubert*, 509 U.S. at 594–95, 113 S.Ct. 2786.

2. I am aware that the Third Circuit has not specifically addressed the question of *Daubert*'s applicability to non-scientific testimony. However, in a recent case the Third Circuit noted that "whether *Daubert* even applies outside the scien-

on the fact that Mr. Rodems is not relying on any particular methodology or technique for his expert testimony. *See Compton,* 82 F.3d at 1519. Rather, Mr. Rodems reached his expert conclusions by drawing upon general electrical engineering principles and his twenty-five years of experience investigating electrical accidents. (Aff. of Rodems at 1). I therefore find there is no need to apply the four primary inquiries outlined in *Daubert* for determining the reliability of a scientific theory or technique. Therefore, an evidentiary hearing is not appropriate in this case.

 Notwithstanding the above analysis, the Court must still determine if Mr. Rodems's proffered testimony is admissible under Federal Rule of Evidence 702. Under Rule 702, the trial judge acts as a "gatekeeper" to ensure that expert testimony or evidence is both reliable and relevant. *Daubert,* 509 U.S. at 589, 113 S.Ct. 2786. Rule 702 requires that: (1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. *Id.* As to the first factor, Mr. Rodems has over fifty years of experience in evaluating electrical and electronic systems. (Aff. of Rodems at 1). Mr. Rodems also has twenty-five years experience investigating over 500 electrical accidents. *Id.* Here, Mr. Rodems will testify that an electrical failure in the 1090 model copier caused the fire. *Id.* at 2. Under Rule 702, I find that Mr. Rodems is an expert in electrical accidents and that his proffered testimony involves technical knowledge of electrical engineering regarding the alleged cause of the fire. The requirement that the testimony assist the trier of fact goes primarily to relevance. *Daubert,* 509 U.S. at 591, 113 S.Ct. 2786. In this case, I find that Mr. Rodems's proffered testimony regarding electrical failure is relevant and thus will assist the trier of fact. The Federal Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. *Kannankeril v. Terminix Intern., Inc.,* 128 F.3d 802, 806 (3d

Cir.1997). Likewise, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786. Mr. Rodems's proffered testimony regarding causation is admissible under Rule 702. Accordingly, defendant's motion for summary judgment on plaintiffs negligence claim (count III) will be denied.

An appropriate order will follow.

### ORDER

NOW, this 30th day of October, 1998, it is hereby ORDERED that:

1. Defendant's Motion for Summary Judgment (Doc. No. 86) as to plaintiff's strict products liability claim (count I) and breach of express warranty claim (count II) is GRANTED.

2. Defendant's Motion for Summary Judgment as to plaintiff's negligence claim (count III) is DENIED.

tific context remains in dispute." *Lauria v. National Railroad,* 145 F.3d 593, 599 n. 7 (3d Cir. 1998).