## Dornon, Appellant, *v.* Johnston.

Argued March 15, 1966. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Frank C. Carroll,* with him *Martin E. Geary,* for appellants.

*Francis H. Patrono,* with him *Adolph L. Zeman,* and *Patrono and Edwards,* and *Zeman and Zeman,* for appellees.

OPINION BY MR. JUSTICE COHEN, April 19, 1966:

This appeal is from the refusal by the lower court, en banc, to remove a judgment of nonsuit entered at the close of the testimony presented by the plaintiffs.

That testimony disclosed that wife-plaintiff suffered a fracture of the left femur which was treated surgically by Dr. Johnston, Jr. with the assistance of Dr. Johnston, Sr. defendants in this action. Subsequent to the surgery wife-plaintiff was detained in the hospital for a period of approximately three months and was then discharged with instructions that she should not walk on the fractured leg. Approximately one month later, while wife-plaintiff was lying quietly in bed she suffered a refracture. At the time of the refracture, Dr. Johnston, Jr. was unavailable. Plaintiffs, however, contacted Dr. Johnston, Sr. by telephone and he

instructed plaintiffs to massage the leg, which plaintiffs refused to do. Two days later, after repeated entreaties, Dr. Johnston, Sr. made a personal examination of the leg by manipulation. He determined that a refracture had occurred and instructed the plaintiffs to do nothing themselves. Without telling plaintiffs he also contacted the Allegheny General Hospital, where the refracture could be properly treated, to obtain a bed for the wife-plaintiff.

On the facts set forth plaintiffs sought to establish negligence in one or more of the following respects: (1) The early discharge of the wife-plaintiff from the hospital; (2) Improper instruction, or no instruction, as to proper care of the leg; (3) Failure to respond to telephone calls; (4) Failure to conduct a proper examination; (5) Failure to take x-rays, and (6) Failure or refusal to send the wife-plaintiff to the hospital promptly, when requested.

Even if any of the facts established by plaintiffs tended to demonstrate negligence, the nonsuit must be sustained, for plaintiffs have totally failed to show any causal connection between the alleged negligent acts and the injury suffered.

In order for a negligent act to give rise to liability that act must be a substantial factual cause of the injury for which damages are sought. *Majors v. Brodhead Hotel,* 416 Pa. 265, 205 A. 2d 873 (1965). Where this factual relationship is sufficiently obscure that laymen are unable to make a reasonable determination as to its existence, expert guidance is necessary. *Florig v. Sears, Roebuck & Co.,* 388 Pa. 419, 130 A. 2d 445 (1957). Expert testimony is, therefore, usually necessary in medical malpractice actions. The causes of the injuries ordinarily involved in such actions are determinable only in the light of scientific knowledge. Annot., 13 A.L.R. 2d 11, 31 (1950).

Certainly in the present case causation is so obscure that there must be expert evidence on the issue, yet at the trial there was no competent testimony introduced that any of the alleged negligent acts could have caused or increased the injury.

Judgment affirmed.