545 A.2d 289

Charles Scott THOMAS, a minor by his parents and natural
guardians, Charles Frederick THOMAS, Jr. and Judith Thom-
as, and Charles Frederick Thomas, Jr. and Judith Thomas,
husband and wife, in their own right, Appellants,

v.

DUQUESNE LIGHT COMPANY, Pittsburgh, Chartiers &
Youghiogheny Railway Company, Kenny Watson, Norman
Cousins, and Mae Lunardi d/b/a Dario's Distributor a/k/a
Dario's Beer Distributors, Appellees.

Superior Court of Pennsylvania.

Argued Nov. 18, 1987.

Filed June 13, 1988.

Rearguments Denied Aug. 4, 1988.

2

Frank E. Little, Pittsburgh, for appellants.

William K. Herrington, Pittsburgh, for Duquesne Light, appellee.

Before WIEAND, MONTEMURO and POPOVICH, JJ.

WIEAND, Judge:

Charles Scott Thomas, age 15, consumed beer, became intoxicated, climbed an electrical transmission tower, came into contact with a high voltage line, was burned, and fell one hundred feet to the ground. In an action brought by the minor plaintiff's parents to recover damages, a default judgment was entered against Kenny Watson, the adult who had purchased the beer; and the trial court entered a compulsory nonsuit against the beer distributor which had sold the beer. The claims against Duquesne Light Company, which owned the tower, the Pittsburgh, Chartiers & Youghiogheny Railway Co., which owned the land on which the tower had been erected, and Norman Cousins, who had

given the minor plaintiff and his friends a ride to the site of the tower, were submitted to the jury. The jury found that the causal negligence of the minor plaintiff had been more than fifty (50%) percent, and verdicts were entered in favor of Duquesne Light Co., the Pittsburgh, Chartiers & Youghiogheny Railway Co., and Norman Cousins. In the claim against Watson, the defaulting defendant, the jury found that the parents of the minor plaintiff had incurred medical expenses in the amount of $61,562.63 and assessed the minor plaintiff's damages at $375,000.00. As between Watson and the minor plaintiff, however, the jury determined that Watson's causal negligence was only thirty (30%) percent and the minor plaintiff's negligence was seventy (70%) percent. Post-trial motions were denied, and judgments were entered on the verdict. The parents of the minor plaintiff appealed.

I. *The verdict in favor of Duquesne Light Company and the Pittsburgh, Chartiers & Youghiogheny Railway Co.*

In support of their request that a new trial be granted with respect to the claims against Duquesne Light Co. and the Pittsburgh, Chartiers & Youghiogheny Railway Co., appellants argue generally that the trial court erred in refusing their requested points for charge.[1] However, if a requested point for charge is sufficiently and adequately covered in the trial court's jury instructions, it is not error to deny the requested point even though it may contain a correct statement of the law. *Olson v. Dietz*, 347 Pa.Super. 1, 6, 500 A.2d 125, 127–128 (1985). In evaluating the adequacy and correctness of the trial court's jury instructions, "[w]e look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party." *Reilly by Reilly v. Southeastern Pa. Transp. Auth.*, 507 Pa. 204, 231,

---

1. Appellants have not alleged any error pertaining specifically to the verdict in favor of Norman Cousins.

489 A.2d 1291, 1305 (1985). See: *Hrivnak v. Perrone,* 472 Pa. 348, 372 A.2d 730 (1977).

██ In the instant case, the trial court's instructions to the jury have not been transcribed. For this reason the trial court found it impossible to address the errors alleged by appellants. For the same reason this Court, on appeal, is unable to review the trial court's jury instructions to determine whether error occurred. *Ward v. Babbit, Inc.,* 270 Pa. 370, 113 A. 558 (1921). See also: *Wolfe v. Scott,* 275 Pa. 343, 119 A. 468 (1923); *Duff v. Hamlin,* 272 Pa. 245, 115 A. 829 (1922). It was the appellants who shouldered the burden of producing a record sufficient to enable an appellate court to conduct meaningful review. See: *Commonwealth v. Williams,* 357 Pa.Super. 462, 516 A.2d 352 (1986). Without a transcript of the trial court's instructions to the jury, we are unable to find therein any basis for awarding a new trial against Duquesne Light and the Pittsburgh, Chartiers & Youghiogheny Railway Co. Appellants have advanced no reason for awarding a new trial in the claim against Norman Cousins.

II. *The Compulsory Nonsuit entered in favor of the beer distributor*

There are two aspects to our review of the compulsory nonsuit entered by the trial court in favor of the beer distributor. The first requires that we review the trial court's refusal to allow an amendment of the complaint at trial to name the correct owner of the beer distributorship.

The complaint, when filed on October 7, 1983, had named Mae Lunardi as the proprietor of the distributing business. Lunardi's answer had contained a denial that she was the owner of the distributorship and had alleged that she was president of Dario's Beer Distributors, a corporation, which owned the business. Despite this answer, appellants did nothing to amend their complaint until September 29, 1986, after they had presented their entire case at trial. At the close of their case-in-chief, appellants orally requested leave of court to amend their complaint to name Dario's Beer

Distributor, a Pennsylvania corporation, as a party defendant instead of Mae Lunardi, d/b/a Dario's Distributors a/k/a Dario's Beer Distributors.[2] On June 25, 1982, when the beer had been sold, the owner of the distributorship was in fact the corporation, the business having been incorporated sometime in 1981. The trial court refused to allow the amendment, stating that to allow it would entail the joinder of a new party after the statute of limitations had expired.[3]

The applicable rule of law was stated in *Girardi v. Laquin Lumber Co.*, 232 Pa. 1, 81 A. 63 (1911), as follows:

Where the statute of limitations has run, amendments will not be allowed which introduce a new cause of action or bring in a new party or change the capacity in which he is sued. If the effect of the amendment is to correct the name under which the right party is sued, it will be allowed; if it is to bring in a new party, it will be refused.

*Id.*, 232 Pa. at 2, 81 A. at 63. See also: *Hoare v. Bell Telephone Co. of Pa.*, 509 Pa. 57, 500 A.2d 1112 (1985); *Gozdonovic v. Pleasant Hills Realty Co.*, 357 Pa. 23, 53 A.2d 73 (1947).

In *Paulish v. Bakaitis*, 442 Pa. 434, 275 A.2d 318 (1971), the plaintiff had named as a defendant "Bart Bertocci, Inc." and had alleged that this defendant controlled the work site at which plaintiff had been injured. The answer contained an averment that there was no such corporation but that there was a partnership known as "Bertocci Construction Company" which had been doing construction work at the site of the accident. Plaintiff did not move to amend the complaint to name the correct defendant until one year and seven months after the answer had been filed and more than three years after the statute of limitations had run. The trial court disallowed the amendment. The Supreme Court reversed. The Supreme Court said that "[s]ince from

---

2. After the jury verdict had been returned, appellants also filed a written motion for leave of court to amend the caption of their complaint. The record does not disclose that action was ever taken on this written motion.

3. The statute of limitations had run on June 25, 1984, two years after the juvenile had been injured. See: 42 Pa.C.S. § 5524(2).

the record it is clear that the same Bertocci business enterprise was involved throughout, there is here no substitution of parties, but the correction of the designation under which the right party was originally sued. The amendment should have been allowed." *Id.*, 442 Pa. at 441, 275 A.2d at 321. A similar result was attained in *Powell v. Sutliff,* 410 Pa. 436, 189 A.2d 864 (1963). There, the plaintiff had sued "Ellis Sutliff and Leo E. Sutliff, individually and as partners t/d/b/a Sutliff Chevrolet Company." After the statute of limitations had expired, the plaintiff sought to substitute Sutliff Chevrolet, a corporation, as a party defendant. The trial court refused the amendment, and the Supreme Court reversed. It said: "[T]he proposed amendment merely seeks to correct the designation of that business entity, in this case from a partnership to a corporation. Since the assets subject to liability will not be enlarged, the court below erred in not permitting the amendment." *Id.*, 410 Pa. at 438–439, 189 A.2d at 865 (footnote omitted). See also: *Waugh v. Steelton Taxicab Co.*, 371 Pa. 436, 89 A.2d 527 (1952) (proposed amendment changing defendant from Steelton Taxicab Company, a corporation, to Anthony Kosir, t/a Steelton Taxicab Company permitted after statute of limitations had run); *Gozdonovic v. Pleasant Hills Realty Co., supra.*

■ These decisions are controlling of the right to amend the complaint in this case. Here, it seems clear that the plaintiffs sued the proper party but that the party defendant was erroneously designated in the complaint. Thus, plaintiffs' complaint was served upon Dario's Beer Distributors by handing a copy of the complaint to the corporate treasurer, Ronald Lunardi. The answer to the complaint, moreover, was signed and verified by Mae Lunardi individually and in her capacity as president of the corporation. Other pleadings and record documents filed in the case appeared to be on behalf of the corporation and were signed by counsel for the corporation. Finally, the beer distributor's answers to interrogatories identified the defendant as "Dario's Beer Distributors, a Pennsylvania corporation."

These answers were verified by Ronald Lunardi, the treasurer of the corporation. From the outset, therefore, and throughout the pendency of this action, it is clear that plaintiffs were attempting to impose liability upon the business entity known as Dario's Beer Distributors. Thus, the amendment to correct the designation of the defendant beer distributor would not have added a new party. Dario's Beer Distributors was the party served, and it cannot escape accountability merely because it was initially designated as a sole proprietorship instead of a corporation. As the Supreme Court observed in *Waugh v. Steelton Taxicab Co., supra,* 371 Pa. at 438, 89 A.2d at 528:

It would be strange indeed if the law would permit a person actually responsible for a civil or criminal act to escape accountability because the summons or warrant served on him named him Richard Roe instead of John Doe.

Although we cannot and do not condone the delay plaintiffs exhibited in failing to move promptly to amend their complaint, this delay is not alone dispositive of the issue before us. See: *Paulish v. Bakaitis, supra,* 442 Pa. at 439 n. 4, 275 A.2d at 320 n. 4. Because the plaintiff sued the proper party, but incorrectly designated that party as a sole proprietorship, the trial court should have allowed an amendment to correct the designation of the defendant as a corporation.

The second aspect of our review of the compulsory nonsuit requires that we determine whether there was sufficient evidence from which a jury could have imposed liability on the beer distributorship.

The rules regarding a compulsory nonsuit are well established. A judgment of nonsuit can be entered only in clear cases, and a plaintiff must be given the benefit of all evidence favorable to him, together will [sic] all reasonable inferences of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. *Flagiello v. Crilly,* 409 Pa. 389, 390–391, 187 A.2d 289, 290 (1963). See *Tolbert v. Gillette,* 438 Pa. 63, 260 A.2d 463 (1970). Thus an order granting a nonsuit is proper

only if the jury, viewing the evidence and all reasonable inferences arising from it, in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action have been established. *Ford v. Jeffries*, 474 Pa. 588, 591–592, 379 A.2d 111, 112 (1977).

However, it is also well settled that a jury can not be permitted to reach its verdict on the basis of speculation or conjecture, *Smith v. Bell Telephone Co.*, 397 Pa. 134, 153 A.2d 477 (1959); and that a judgment of nonsuit is properly entered if a plaintiff has not introduced sufficient evidence to establish the elements necessary to maintain an action. *Schofield v. King*, 388 Pa. 132, 130 A.2d 93 (1957). See *Yohe v. Yohe*, 466 Pa. 405, 353 A.2d 417 (1976); *Dornon v. Johnston*, 421 Pa. 58, 218 A.2d 808 (1966); *Goater v. Klotz*, 279 Pa. 392, 124 A. 83 (1924). In addition, it is the duty of the trial judge to determine, prior to sending the case to the jury, whether or not the plaintiff has met this burden. *Thomas v. Ribble*, 404 Pa. 296, 172 A.2d 280 (1961).

*Morena v. South Hills Health System*, 501 Pa. 634, 638–639, 462 A.2d 680, 682–683 (1983). The evidence in the instant case, when viewed in the light most favorable to the plaintiffs, discloses the following facts.

On June 25, 1982, the minor plaintiff had asked his adult neighbor, Kenny Watson, to get some beer for him and his friends. Watson consented and drove the minor plaintiff and two of his juvenile friends in Watson's car to Dario's Beer Distributors in McKees Rocks. When a clerk approached and looked in the window, Thomas was in the front passenger's seat and was holding in his lap a mug containing twenty-three dollars. Watson ordered two cases of Iron City beer. No one else in the car spoke to the clerk. The clerk placed the two cases of beer on the back seat between the two boys who were seated in the rear. Watson looked at Thomas for the money with which to pay for the beer. Thomas removed the money from the mug, counted out enough to pay for the beer, and handed it to Watson, who gave it to the clerk. When the clerk returned to the

car and said that he needed more money, Thomas dumped the contents of the mug and counted out the correct change, which he then handed to Watson who, in turn, paid the clerk. Watson then took Thomas and his friends to a popular teen-age drinking spot known as "Beer Cans."

The law is well settled that it is negligence per se for a licensee to serve alcoholic beverages to a minor in violation of section 493(1) of the Liquor Code of April 12, 1951, P.L. 90, 47 P.S. § 4–493(1). *Smith v. Clark*, 411 Pa. 142, 144, 190 A.2d 441, 442 (1963). See also: *Matthews v. Konieczny*, 515 Pa. 106, 113, 527 A.2d 508, 512 (1987). A commercial licensee who violates this section of the statute will be held liable for injuries sustained by the minor or by third persons if such injuries are proximately caused by the furnishing of alcohol to the minor. *Matthews v. Konieczny, supra*, 515 Pa. at 113, 527 A.2d at 512; *Smith v. Clark, supra*, 411 Pa. at 144, 190 A.2d at 442. The issue in this appeal, however, is whether liability will be imposed upon a licensee who sells alcoholic beverages to an adult under circumstances in which the licensee knew or should have known that the adult was purchasing the beverages for use by minors. This issue has not previously been presented directly to the appellate courts of this Commonwealth. Nevertheless, we are not wholly without guidance.

In *Reber v. Commonwealth of Pa., Liquor Control Bd.*, 101 Pa.Commw. 397, 516 A.2d 440 (1986), the plaintiff, a seventeen-year-old minor, had requested a friend, also a minor, to purchase a fifth of liquor for him from a state store and had given the friend money with which to make the purchase. The friend's age was not questioned at the time of the purchase, and the contents of the bottle which he purchased were consumed by plaintiff and his friend. While operating a motorcycle thereafter, the minor plaintiff lost consciousness and was injured when the motorcycle crashed. He commenced an action against the Liquor Control Board in which he contended that its clerk had negligently sold liquor to his minor friend. The trial court entered summary judgment in favor of the Board, but the

Commonwealth Court reversed. Writing for a three judge panel, the Honorable David Craig wrote that the Board had "violated section 493(1) [of the Liquor Code] by selling liquor under circumstances in which it was likely that the liquor would reach the hands of other minors" and, therefore, had "breached a duty owed to [the minor plaintiff] not to furnish liquor to minors either directly or through likely intermediaries." *Id.* at 406, 516 A.2d at 444. The Commonwealth Court observed that "the prospect of [a minor] sharing his illegally purchased liquor with another minor, and the injury resulting, is [not] so unforeseeable that [the minor plaintiff] cannot assert that the LCB breached the duty owed to him." *Id.* at 406, 516 A.2d at 444.

Several decisions of this Court must also be considered in determining whether appellants' evidence pertaining to the manner in which the sale occurred should have been left to the jury. In *In the Matter of J–J Bar, Inc.*, 210 Pa.Super. 349, 233 A.2d 625 (1967), this Court held that there had been a violation of section 493(1) of the Liquor Code where a bartender had served two drinks to an adult patron who had been seated at the bar with a minor and where the bartender had not asked the minor for his age, had not requested identification from the minor, and had not required him to leave the licensed premises. The Court also found a violation of the Code in *Salvia's Bar, Inc. v. Pennsylvania Liquor Control Bd.*, 211 Pa.Super. 275, 236 A.2d 839 (1967), where three minors had entered a bar and were seated with an adult who purchased six draft beers and placed them on the table in front of the several minors. The Court said: "[I]t was [the bartender's] duty to refuse to permit the adult to furnish beer to the minor." *Id.* at 276, 236 A.2d at 839. The Commonwealth Court, in interpreting the Liquor Code, has interpreted section 493(1) in a similar way. Thus, in *Pennsylvania Liquor Control Bd. v. Grand Marcus One, Inc.*, 69 Pa.Commw. 483, 451 A.2d 810 (1982), where three minors had been sitting at a table and drinking beer with adults in the licensee's premises, the Court held that "[t]he bartender was under a duty to see to it that the adults did not furnish liquor to the minors." *Id.* at 485, 451

A.2d at 811. And in *The Matter of Revocation of Restaurant Liquor License No R–12122,* 78 Pa.Commw. 159, 164, 467 A.2d 85, 88 (1983), the Court said: "[T]he purchase of alcoholic beverages by an adult for a minor's consumption does not free the licensee of his duty to prevent the liquor … from being furnished to the minor." All of these cases involved alleged violations of section 493(1) of the Liquor Code and are not negligence cases. However, they are helpful in determining whether there was a breach of duty owed to the minor plaintiff in Watson's car when beer was sold at the request of the adult driver but paid for with moneys supplied by the minor plaintiff.

■ The beer distributor was required by law to refrain from selling alcoholic beverages to minors. This duty would have been breached by a sale of alcohol made directly to minors. It could also be breached by an indirect sale to minors through an intermediary if it were known or should have been known that the alcohol was being purchased for use by minors. If Watson had told the distributor that he wanted to buy two cases of beer for consumption by the children seated in his car, no one would seriously question the existence of a duty owed by the distributor to the children. If, because of the circumstances, the distributor knew or should have known that Watson was purchasing beer for consumption by the minor passengers in his vehicle, the distributor would also have owed a duty to refrain from selling beer for consumption by minors. Whether the distributor knew or should have known that the beer was being purchased for consumption by minors was, in view of plaintiffs' evidence, an issue of fact for the jury to decide. See: *Bradshaw v. Rawlings,* 612 F.2d 135, 143 (3d Cir.1979) (licensee who sold beer to minors not immune from liability merely because delivery signed for by adult).

■ If the jury had found that the distributor breached a duty owed to the minor plaintiff, then the jury would also have been required to determine whether the breach was a substantial factor in causing the minor plaintiff's injuries. The issue of legal causation could not properly be taken from the jury so long as reasonable persons might differ as

to whether the distributor's conduct was a significant or insignificant factor in causing appellant's injuries. *Ford v. Jeffries*, 474 Pa. 588, 595, 379 A.2d 111, 114 (1977). See also: *Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 246–247, 465 A.2d 1231, 1233–1234 (1983).

We conclude, therefore, that it was error to enter a compulsory nonsuit in the claim made by plaintiffs against the beer distributor.

### III. *The default judgment against Kenny Watson*

The default judgment which had been entered prior to trial against Watson was conclusive of his liability to the plaintiffs. There remained to be determined only the amount of the damages to be assessed against him. The trial court, reading literally the Comparative Negligence Law,[4] held that the plaintiffs' damages recoverable against Watson were to be reduced to the same extent to which the minor plaintiff's negligence contributed to the happening of the accident. Responding to the trial court's instructions, the jury found that the minor plaintiff's causal negligence had been seventy (70%) percent and Watson's only thirty (30%) percent. We are constrained to hold that the trial court's instructions were erroneous.

■ As a result of his default, Watson's liability had been determined finally by the judgment entered against him. As to him, therefore, the issues were limited to the amount of the plaintiffs' damages. See: Std.Pa.Prac.2d § 68.16. Defenses which go to the right of recovery are not available to a defaulting defendant. The doctrine of comparative negligence, even though it goes in part to the assessment of damages, is primarily a substantive defense going to a plaintiffs' right to recover and, therefore, is not available as a defense to a defendant against whom a default judgment has been entered. See: *Whitby v. Maloy*, 150 Ga.App. 575, 258 S.E.2d 181 (1979); *Passino v. Cascade Steel Fabricators, Inc.*, 105 N.M. 457, 734 P.2d 235 (1986); *Adkisson v. Huffman*, 225 Tenn. 362, 469 S.W.2d 368 (1971). Cf. *Harless v. Kuhn*, 403 So.2d 423 (Fla.1981). Any other result

4. 42 Pa.C.S. § 7102.

would weaken the efficacy of default judgments. *Passino v. Cascade Steel Fabricators, Inc., supra.* With respect to the plaintiffs' recovery against Watson, therefore, there could be no reduction because of the minor plaintiff's negligence. The trial court erred when it instructed the jury otherwise.

## IV. *The new trial*

▮ The erroneous entry of the nonsuit in favor of the beer distributor makes a new trial necessary. The new trial must be as to all defendants. Although the jury refused to impose liability upon Duquesne Light, the Pittsburgh, Chartiers & Youghiogheny Railway Co., and Norman Cousins, it did not find that they were not negligent. Consistently with the trial court's instructions, the jury found only that the minor plaintiff's causal negligence exceeded that of these three defendants.[5] Upon retrial, the jury should be required to determine the causal negligence, if any, of all defendants, as well as that of the minor plaintiff, and then apportion the same among the parties. This will now include the negligence, if any, of the beer distributor. It will also include, for purposes of apportioning causal negligence, the negligence of Kenny Watson. Although the default judgment entered against him has rendered him liable to the plaintiffs to the full extent of their actual damages, the extent to which his negligence in fact contributed to the minor plaintiff's injuries must be determined in order to apportion fault among the remaining parties to this litigation. Recovery by the plaintiffs against all defendants other than Watson will be precluded only if the minor plaintiff's negligence exceeds the combined negligence of all defendants. *Elder v. Orluck,* 511 Pa. 402, 515 A.2d 517 (1986).

Reversed and remanded for a new trial.

POPOVICH, J., files a dissenting opinion.

5. It was after this finding had been reported to the trial court that the jury was instructed to apportion the negligence of Kenny Watson and the minor plaintiff.

POPOVICH, Judge, dissenting:

I respectfully dissent from the majority's opinion on several grounds. First, I would affirm the lower court's denial of the appellants' motion to amend their complaint after the statute of limitations had expired. Second, I would affirm the lower court's grant of compulsory nonsuit since I disagree with the majority's conclusion that "[w]hether the distributor knew or should have known that the beer was being purchased for consumption by minors was, in view of the plaintiffs' evidence, an issue of fact for the jury to decide." (Majority op., p. 12). And third, I do not believe a new trial is warranted as to any defendant.

In regard to the amendment of the appellants' complaint, our Supreme Court, in *Wright v. Eureka Tempered Copper Company*, 206 Pa. 274, 55 A. 978 (1903), expressed the operative test to be used under the instant facts: "If the effect of the amendment will be to correct the name under which the right party was sued, it should be allowed; if its effect will be to bring in a new party on the record, it should be refused after the running of the statute of limitations." *Wright*, 55 A. at 979. *See Girardi v. Laquin Lumber Co.*, 232 Pa. 1, 81 A. 63 (1911); *Hoare v. Bell Telephone Company of Pennsylvania*, 509 Pa. 57, 500 A.2d 1112 (1985).

To support its decision, the majority relies upon *Paulish v. Bakaitis*, 442 Pa. 434, 275 A.2d 318 (1971), and *Powell v. Sutliff*, 410 Pa. 436, 189 A.2d 864 (1963) which are clearly distinguishable. Both cases allow the amendment of a complaint when a partnership is substituted for a corporation or *vise versa*. Thus, those cases stand for the proposition that amendment is allowed when the effect is merely to substitute basically identical business entities. Instantly, the appellants wish to substitute a corporation for an individual in an attempt to recover from the corporation's assets.[1] This situation is not analogous to those cases cited

---

1. The appellants contend that they merely wish to substitute two allegedly similar business entities, a sole proprietorship and a corporation.

by the majority where "the assets subject to liability will not be enlarged." *Powell*, 189 A.2d at 865.

Seemingly, the majority has failed to consider the nature of the corporation as a independent legal "person." In *Glazer v. Cambridge Industries, Inc.*, 281 Pa.Super. 621, 625, 422 A.2d 642, 644 (1980), we stated: "A corporation is a distinct and separate entity, irrespective of the ownership of the stock, and the fact that one person owns all its stock does not make him and the corporation one and the same." *See also Kiehl v. Action Mfg. Co.*, 517 Pa. 183, 191, 535 A.2d 571, 575–575 (1987) (parent corporation and subsidiary are separate and distinct entities); *United Nat. Ins. Co. v. M. London, Inc.*, 337 Pa.Super. 526, 487 A.2d 385, 391–392 (1985); *Barium Steel Corp. v. Wiley*, 379 Pa. 38, 108 A.2d 336 (1954). Accordingly, the fact that Mae Lunardi is the president of Dario's Beer Distributors and has a significant financial interest in the corporation is not sufficient to consider the appellee and the corporation as identical parties distinguished only by different names. Further, it is abundantly clear that a sole proprietorship and a corporation are not sufficiently similar business entities to allow substitution of one for the other after the statute of limitations has expired.

The majority also cites *Waugh v. Steelton Taxicab Co.*, 371 Pa. 436, 89 A.2d 527 (1952) in which an amendment substituting an individual for a corporation was permitted after the statute of limitations had run. However, the majority has failed to recognize that in *Waugh*, supra, our Supreme Court's underlying concern was that "the plaintiff's error in pleading might have resulted from deception on the part of the defendant." *Powell*, 189 A.2d at 865–866, n. 6. Instantly, the appellants have not alleged and we have not found any deception on the part of the appellee, Mae Lunardi.

In direct contradiction to the majority's decision, we ruled, in *Scranton Private Hospital v. Caum*, 61 Pa.Super. 93 (1915), that amendment is properly refused when the statute of limitations has expired and the proposed amend-

ment seeks to substitute a corporation for named individuals. As our Supreme Court, commenting on *Scranton Private Hospital,* supra, stated: "That amendment was properly refused since liability would have been imposed on a new and distinct party." *Powell v. Sutliff,* 189 A.2d at 865; *See also Girardi,* supra, 81 A. 63 (amendment refused where plaintiff sought to substitute individuals for corporation). Accordingly, the lower court correctly denied the instant motion to amend as the appellants merely sought to substitute a corporate entity, Dario's Beer Distributor, for a named individual doing business as a sole proprietorship, Mae Lunardi, and, thus, impose liability on a new and distinct party.

Moreover, under Pennsylvania law, a long unexplained delay between the original pleading and the motion to amend will be considered as a factor in deciding whether to permit the amendment. *Tanner v. Allstate Ins. Co.,* 321 Pa.Super. 132, 143, 467 A.2d 1164, 1169 (1983); *See also, Comm., Dept. of Transp. v. Bethlehem Steel Corp.,* 486 Pa. 186, 404 A.2d 692 (1979) (defendant's motion to amend answer filed three years after original complaint denied); *Hightower v. Bekins Van Lines Co.,* 267 Pa.Super. 588, 407 A.2d 397 (1979) (motion to amend filed two years and five months after original complaint denied). Instantly, Charles Scott Thomas was injured on June 25, 1982, and the appellants filed their original complaint on October 7, 1983. The record reveals that, in her original answer filed in February of 1984, the appellee specifically denied being an individual doing business as a sole proprietorship, as follows:

The averments contained in paragraph 11 of plaintiffs' Amended Complaint are denied in part. Dario's Beer Distributors is a Pennsylvania corporation having its place of business at 628 Broadway, McKees Rocks, Pennsylvania. Ma Lunardi is President of Dario's Beer Distributors, a corporation. At no time relevant to to [sic] plaintiffs' Complaint did Mae Lunardi engage in any conduct relevant to plaintiffs' Complaint in any capacity

other than as President of Dario's Beer Distributors, a corporation. [Record at 43a–44a].

The appellee, Mae Lunardi, did not waiver in her description of Dario's Beer Distributors as a Pennsylvania corporation for the entire duration of the action. Moreover, after its incorporation in 1981, the fact that Dario's Beer Distributors was a corporation, not a sole proprietorship, became a matter of public record which the appellants through the exercise of reasonable diligence should have discovered. However, the appellants, disregarding the appellee's answers to their complaint and their interrogatories, failed to amend their complaint until September 29, 1986, almost three years after their original complaint was filed and over two years and seven months after notification of the name of the true owner of Dario's Beer Distributors. I find that the lower court's action of denying the motion to amend was not an abuse of discretion especially in light of the facts that amendment would add a new party after the statute of limitations has run and that the appellants have not explained their failure to amend their complaint in a timely manner. Consequently, I would affirm the grant of compulsory nonsuit on the ground that the correct party was not named as a defendant.

We also note that the appellants failed to move for leave to amend their complaint until after they had presented their entire case in chief against the appellee. Thus, it appears to this observer that the appellants, realizing that Mae Lunardi could not be held individually liable for the action of the corporation, attempted to bring in a new defendant, the corporation, to replace her. I can find no reason to grant the appellant a second chance at recovery by bringing in a new party after the statute of limitations has expired when, in fact, the appellant's own litigation strategy has provided the opportunity for the "true defendant" to escape possible liability.

Second, supposing Dario's Beer Distributors was properly made a party to this action, I would still affirm the lower court's grant of compulsory nonsuit against the appellants.

I take exception to the majority's determination that "[whether] the distributor knew or should have known that the beer was being purchased for consumption by minors was, in view of the plaintiffs' evidence, an issue of fact for the jury to decide." (Majority op., p. 12). Under the rule of *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111, 112 (1977), an order granting a compulsory nonsuit is proper only if the jury, viewing the evidence in light most favorable to the plaintiff, could reasonably conclude that the plaintiff has failed to establish the elements necessary to maintain his or her cause of action. *See also Morena v. South Hills Health System,* 501 Pa. 634, 462 A.2d 680, 682–683 (1983). Instantly, compulsory nonsuit is proper if the appellants failed to establish that the appellee owed a duty to the injured minor.

Under the rule expressed by our Supreme Court in *Smith v. Clark,* 411 Pa. 142, 190 A.2d 441, 442 (1963), if "intoxicating beverages are sold in violation of [47 Pa.S.A. § 493(1) ],[2] this constitutes negligence, and if the unlawful act of acts are the proximate cause of an injury, the violator is responsible for the loss suffered." To support their position that the appellee owed a duty to the minor not to sell beer to the purchasing adult, the majority cites numerous cases which hold that a liquor licensee who *knowingly* permitted, or failed to prevent, a sale of liquor to an adult for the sole purpose of passing the liquor on to minors is in violation of Section 493(1).[3] *See In the Matter of J–J Bar, Inc.,* 210

**2.** 47 Pa.S.A. § 4–493(1) provides that it shall be unlawful:
> For any licensee or the board, or any employee, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold furnished or given, to any person visibly intoxicated, or to any insane person, or to any minor, or to habitual drunkards, or persons of known intemperate habits.

**3.** As the majority notes, those cases which are cited in support of this proposition are not negligence cases. However, they are demonstrative of what constitutes a violation of Section 493 by a liquor licensee and, consequently, what constitutes negligence per se on the part of the liquor licensee. However, I am not convinced that a beer distributor should be held to the same standards as a liquor licensee.

Pa.Super. 349, 233 A.2d 625 (1967); *Salvia's Bar, Inc. v. Pennsylvania Liquor Control Board*, 211 Pa.Super. 275, 236 A.2d 839 (1967); *Pennsylvania Liquor Control Board v. Grand Marcus One, Inc.*, 69 Pa.Cmwlth.Ct. 483, 451 A.2d 810 (1982); *The Matter of Revocation of Restaurant License No. R–12122*, 78 Pa.Cmwlth.Ct. 159, 467 A.2d 85 (1983). Consequently, the majority holds that if, under the facts presented, a beer distributor knew or should have known that an adult was purchasing beer for consumption by minors, the distributor owed a duty to the minor not to sell the beer to that purchaser. Therefor, under the majority's rule the question of whether a distributor knew or should have known that beer was purchased for consumption of minors is a question for the jury to decide.

I am not persuaded that the courts of this Commonwealth intended that the aforementioned rules regarding distribution of liquor to minors by licensees on licensed premises apply similarly to over-the-counter distribution of liquor by LCB stores or beer distributorships. Certainly, the liquor licensee and the beer distributor are both under an affirmative duty to see that alcoholic beverages are not provided directly or indirectly to minors. However, the majority fails to consider that the "bar" owner is afforded the opportunity to control and supervise the *distribution and consumption* of alcohol, while the beer distributor has little or no control over who will be the ultimate consumer of the beer once a legal sale to an adult has occurred.

Additionally, to support its position, the majority cites *Reber v. Comm. of Pa., Liquor Control Bd.*, 101 Pa. Cmwlth.Ct. 397, 516 A.2d 440 (1986). *Reber*, supra, is the only Pennsylvania decision which holds a liquor retailer liable for injuries sustained by the intoxicated minor for which the liquor was purchased originally. In *Reber*, supra, our Commonwealth Court held that "the LCB not only violated section 493(1) by selling liquor to the underaged Mr. Geaneotes, but it also violated section 493(1) by selling liquor under circumstances in which it was likely that the liquor would reach the hands of other minors [including the

injured minor, Mr. Reber]. Under our Supreme Court's reasoning in *Smith v. Clark*, [411 Pa. 142, 190 A.2d 441 (1963)], we must find that the LCB breached a duty owed to Mr. Reber not to furnish liquor to minors either directly or through likely intermediaries." *Reber*, 516 A.2d at 444.

Upon careful review, it is clear that the holding in *Reber*, supra, applies only when the initial purchase of alcohol is made by a minor and, thus, the liquor "retailer" violates Section 493(1) which is negligence per se making him liable for all resulting injuries of which the illegal sale was a proximate cause. Consequently, *Reber*, supra, is distinguishable from the case at bar which involves a *legal* sale of alcohol and its holding must be narrowly construed to apply only when the initial sale of the liquor was *illegal*, thus, identifying the purchaser as a "likely intermediary." [4]

Instantly, I do not believe that the beer distributor owed a duty to the minor appellant since the beer was sold legally to an adult who later, at a time and place outside of the distributor's control, provided the minors with alcohol. *See Old Express Limited Appeal*, 70 Pa.Cmwlth.Ct. 382, 453 A.2d 679 (1982) (licensee not accountable for beer reaching hands of minors where details of purchase unknown and minors not within licensee's sphere of control). Arguably, the sale of alcoholic beverages to an adult accompanied by

**4.** Instantly, the majority believes the issue of foreseeability is whether the distributor knew or should have known the adult was purchasing the beer with the intent of distributing it to minors. However, the *Reber* court posed a much narrower question of foreseeability as follows: "We must, therfore, consider whether it is reasonable to expect a minor customer to share an illegal liquor purchase with other minors." 516 A.2d at 444. In resolving the foreseeability issue, the court stated: "We cannot say that the prospect of [a minor] sharing his illegally purchased liquor with another minor, and the injury resulting, is so unforeseeable that [the injured minor] cannot assert that the LCB breached the duty owed him." *Reber*, 516 A.2d at 444. Thus, the foreseeability question was limited in scope to impose liability only when a retailer knew or should have known a minor who purchased liquor illegally would share his contraband with another minor. The *Reber* court did not propose to answer the more expansive foreseeability question posed presently in the context of a legal sale of alcohol.

minors is a common place occurrence which would not normally arouse a liquor retailer's suspicions.

For example, consider the following fact pattern and analysis of it under the majority's holding: A parent of a graduating high school senior orders a keg of beer from a beer distributorship and asks the distributor to deliver the beer. Unknown to the distributor, the adult is buying the beer for consumption by only the parents-adults in attendance at a graduation party held in honor of their respective sons' and daughters' graduation. Complying with the request, the distributor delivers the beer to the purchaser's home, and, while setting up the keg-tap system, the distributor notices a large number of minors preparing for the graduation party. After providing the distributor with proper identification, the parent who ordered the beer pays for the keg with money given to him by one of the minors.

Under the majority's rule, the beer distributor should not sell beer to this parent for fear of liability arising out of the possibility that a minor at the party may consume a portion of the beer, become intoxicated and somehow injure himself. Taking this example one step further, suppose that some of the minors, without their parent's consent or knowledge, consume some of the beer and then one of the minors is injured in an automobile accident. Under the majority rule, a jury question now arises as to whether the distributor knew or should have known that the beverage was purchased for consumption by minors. While the facts of this example clearly show that the beer was not purchased for the consumption of minors, it is possible, if not entirely probable, that a jury, applying hindsight, would find that the distributor is liable for the minor's injuries since he should have known the beer was purchased, at least in part, for consumption by minors. I do not believe that a beer distributor who has *legally* sold alcohol to an adult should face possible liability for that adult's independent action of providing alcohol to minors.

Imposition of a duty owed to the minor for whom the beer was originally purchased is not warranted in the context of

a *legal* sale of alcohol. Additionally, I do not find support in the case law for the majority's holding. Once the beer distributor or LCB sales clerk has ascertained the correct age of the purchasing adult, he has complied with the statutory duty under Section 493(1), and, consequently, he should be absolved from any future liability arising out of the adult purchaser's independent act of supplying alcohol to minors.

In sum, I do not believe the lower court abused its discretion in granting the compulsory non-suit for the following reasons: 1) The lower court correctly denied the appellants' motion to amend their complaint since the appellants' motion was not timely filed and attempted to add a new party to the suit; and 2) The majority erroneously concluded that whether the distributor knew or should have known that the beer was being purchased for consumption by minors was an issue of fact for the jury to decide.

Additionally, since I believe that compulsory nonsuit was properly granted by the lower court, I find no reason to warrant a new trial "as to all defendants." (Majority op., p. 295). Moreover, I see no reason to remand for a new trial to apportion causal negligence between the minor plaintiff and all remaining defendants, including the defaulting defendant, Kenny Watson.

While the jury verdicts did not specifically enumerate the proportions of causal negligence attributable to each joint tortfeasor as required under Pennsylvania's comparative negligence statute, a new trial is not necessary since the verdicts, though incorrect in form, clearly evince the jury's true intentions.[5]

5. The Pennsylvania comparative negligence statute reads, in pertinent part, as follows:
§ 7102. Comparative negligence
(a) General rule.—In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that theplaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be dimin-

Under Pennsylvania law, "[v]erdicts which are not technically correct in form, but which manifest a clear intent on the part of the jury, may be corrected without resort to further deliberation or a new trial." *Goertel v. Muth,* 331 Pa.Super. 179, 480 A.2d 303, 306 (1984), quoting *Rusidoff v. DeBolt Transfer, Inc.,* 251 Pa.Super. 208, 211–212, 380 A.2d 451, 453 (1977).

Instantly, after hearing *all* the evidence, the jury entered two verdicts: The first verdict was entered in favor of defendants Duquesne Light Co., Pittsburgh, Chartiers & Youghiogheny Railway Co. and Norman Cousins declaring that the minor plaintiff was more than 50% responsible for his injuries; and the second verdict stated that the appellant was 70% negligent and Kenny Watson was 30% negligent. Additionally, when the court specifically asked: "Do you,

ished in proportion to the amount of negligence attributed to the plaintiff.

**(b) Recovery against joint defendant; contribution.**—Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. The plaintiff may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution.

Interpreting our comparative negligence statute, our Supreme Court, in *Elder v. Orluck,* 511 Pa. 402, 515 A.2d 517 (1986), stated:

The Act adopts the notion that injured victims will obtain a recovery in all cases where the victim's negligence contributing to the injuries is not greater than that of the defendant or defendants. The policy purposes of the Act are met by comparing the plaintiff's negligence to the combined negligence of all defendants. We hold, therefore, that under the provisions of the Pennsylvania Comparative Negligence Act, recovery by an injured plaintiff will be precluded only where plaintiff's negligence exceeds the combined negligence of all defendants. Further, each such defendant is liable for the plaintiff's damages in proportion to his degree of negligence even if the portion of negligence attributable to a particular defendant is less' than the negligence of the plaintiff. *Elder,* 515 A.2d at 525.

Accordingly, the lower court should have instructed the jury to determine the individual levels of causal negligence of the plaintiff and the defendants, including the defendant in default as it is clear that a defendant's default status is irrelevant to the application of the statute.

the jurors, find that the causal negligence of Charles Scott Thomas is more than fifty percent of the total causal negligence of all defendants involved in the law suit?" (N.T. 272), the jurors answered affirmatively. Consequently, upon review of the record, the jury's finding that the appellant was overwhelmingly responsible for his injuries is abundantly clear. Obviously, the jury believed that the plaintiff's causal negligence was more than 50% of the total causal negligence. Therefor, the verdicts were sufficient for the purposes of the Pennsylvania comparative negligence statute, and I find no reason to order a new trial simply to enumerate specifically each defendant's individual causal negligence.