595 A.2d 56

Charles Scott THOMAS, a minor, by his parents and natural guardians, Charles Frederick THOMAS, Jr. and Judith Thomas, and Charles Frederick Thomas, Jr. and Judith Thomas, husband and wife, in their own right, Appellees,

v.

DUQUESNE LIGHT COMPANY, Pittsburgh Chartiers & Youghiogheny Railway Company, Kenny Watson, Norman Cousins and Mae Lunardi, d/b/a Dario's Distributor, a/k/a Dario's Beer Distributors.

Appeal of DUQUESNE LIGHT COMPANY and Pittsburgh Chartiers & Youghiogheny Railway Company.

Supreme Court of Pennsylvania.

Argued March 4, 1991.

Decided Aug. 14, 1991.

William K. Herrington, Pittsburgh, for Duquesne Light Co.

Aloysius F. Mahler, Pittsburgh, for Pittsburgh Chartiers and Youghiogheny Ry. Co.

Frank E. Little, Pittsburgh, for Charles Scott Thomas.

Henry M. Sneath, Meyer Darragh Buckler, Bebenek Eck & Hall, Pittsburgh, for Norman Cousins.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

On June 25, 1982, Charles Scott Thomas, a minor, while in an inebriated condition, climbed an electrical tower and came in contact with a live high voltage wire. As a result of this contact Mr. Thomas fell. This incident set in motion the chain of events which necessitates this opinion.

The record before us discloses that on the above date Charles Thomas, together with teenage accomplices, enlisted the services of an adult neighbor, one Kenny Watson, to aid them in purchasing two cases of beer from Dario's Beer Distributors, a/k/a Dario's Distributors. Having pur-

chased the beer Kenny Watson then transported the teen-agers to a location where they met one Norman Cousins. Mr. Cousins then transported Mr. Thomas and friends to what ultimately became the site of the accident. This site was property owned by the Pittsburgh Chartiers & Yough-iogheny Railway Company (Pittsburgh C & Y), upon which was located an electrical tower owned by the Duquesne Light Company (Duquesne Light). During the course of the day's activities Mr. Thomas decided to climb the tower. While engaged in this climb Mr. Thomas came into contact with the aforementioned wire, the result of which was that Mr. Thomas fell and sustained the injuries which are the underlying basis of this suit.

On October 7, 1983, appellees, plaintiffs below, filed a complaint in trespass against Duquesne Light, Pittsburgh C & Y, Kenny Watson, Norman Cousins, and Mae Lunardi, a/k/a Dario's Distributors, a/k/a Dario's Beer Distributors (Dario's Distributors). Kenny Watson, despite being prop-erly served, never responded to the complaint, and a default judgment was entered against him. The case proceeded to trial against all other defendants. At the close of plaintiffs' trial presentation the trial court granted the motion of defendant Dario's Distributors for a nonsuit and dismissed plaintiffs' claims against it. The claims against the remain-ing defendants were permitted to go to the jury.

The jury returned a verdict against the appellees, finding that the causal negligence of Charles Scott Thomas was more than fifty per cent (50%) of the total negligence of the remaining defendants.[1] Consequently, the trial judge en-

1. There was considerable confusion surrounding this verdict, caused in large part by the isolation by the jury of Kenny Watson's partic-ipation in this incident. Unfortunately, the responses by the trial judge to the jurors' questions fostered this confusion. For instance, at one point during the deliberations the jury sent the following question to the trial judge: "If the jury should find in favor of the defendants, is Kenny Watson automatically responsible for over 50 percent?" (Trial transcript p. 269) To this question the judge responded: "In the event you find a verdict for the defendants other than Kenny Watson, you should make a determination of the total damages suffered by the plaintiffs. If you find that Charles Scott Thomas was negligent, then

tered a verdict against the Thomases and in favor of Duquesne Light, Pittsburgh C & Y, and Norman Cousins. Post-trial motions were filed by the Thomases, which were denied. The Thomases thereupon appealed to the Superior Court.

On appeal the Superior Court reversed, holding that it was error for the trial court to have entered the compulsory nonsuit in favor of Dario's Distributor, and that the trial court's instructions as to the apportionment of negligence between Mr. Watson and the other defendants was incorrect. The Superior Court then remanded the case for a new trial as to all defendants with the following instructions:

> Upon retrial, the jury should be required to determine the causal negligence, if any, of all defendants, as well as that of the minor plaintiff, and then apportion the same among the parties. This will now include the negligence, if any, of the beer distributor. It will also include, for purposes of apportioning causal negligence, the negligence of Kenny Watson. Although the default judgment entered against him has rendered him liable to the plaintiffs to the full extent of their actual damages, the extent to which his negligence in fact contributed to the minor plaintiff's injuries must be determined in order to apportion fault among the remaining parties to this litigation. Recovery by the plaintiffs against all defendants other than Watson will be precluded only if the minor plaintiff's negligence exceeds the combined negligence of all defendants. (citation omitted)

*Thomas v. Duquesne Light Company, et al.,* 376 Pa.Super. 1, 545 A.2d 289 (1988).

Petitions for allowance of appeal were filed by Duquesne Light, Pittsburgh C & Y, and Dario's Distributors. The

you should determine the percentage of his negligence in relation to the total causal negligence of the plaintiff and Kenny Watson." (Trial transcript pp. 269–270) This exchange was followed by more jury questions regarding the effect of Mr. Watson's negligence on the ultimate recovery by the Thomases, to each of which the trial judge responded with instructions which served to isolate Mr. Watson's negligence from that of the other defendants.

joined petition of Duquesne Light and Pittsburgh C & Y was granted and generated this appeal, i.e., No. 75 W.D. Appeal Docket 1989. Dario's Distributors' petition was also granted to be heard at No. 76 W.D. Appeal Docket 1989.[2] We are now called upon to resolve the issue of whether the Superior Court erred in awarding a new trial as to defendants Duquesne Light and Pittsburgh C & Y.

In this appeal appellants posit three arguments; however, the principle thrust of their objection to the Superior Court's decision is contained in their contention that they were exonerated by the jury and they should not have "to stand trial again in order for the Thomases to pursue a separate and independent cause of action to recover damages against Lunardi/Dario's and Watson for supplying beer to a minor who became intoxicated." (Appellants' Brief p. 7)[3]

Appellants' position is based on their view that the plaintiffs had separate causes of action which were joined for trial, and, since the jury returned a verdict in their [appellants] favor they should not be subjected to a new trial to resolve a cause of action which exists only against Dario's Distributors. In support of this position appellants place great reliance on the case of *Meyer by Meyer v. Heilman,* 503 Pa. 472, 469 A.2d 1037 (1983).

In *Meyer,* this Court was called upon to resolve the issue of whether a plaintiff who had asserted a products liability claim against a manufacturer and a claim of negligence against a separate defendant was entitled to a new trial against both when the trial court had erroneously entered a nonsuit as to the manufacturer and the jury had exonerated

2. For reasons that do not appear of record Dario's Distributors failed to file a brief and the appeal appearing at No. 76 W.D. Appeal Docket 1989 was dismissed for the failure of appellant to prosecute said appeal.

3. Appellants' other arguments are addressed to: 1) the jury instructions, an issue which was not regarded as dispositive by the Superior Court; and 2) the purported effect of the Superior Court's decision on future cases, an issue which is discussed in our resolution of appellants' principle argument.

the other defendant. This Court, in holding that the plaintiff could not have a second opportunity against the exonerated defendant, noted that plaintiffs there "could prevail ... only if they had a right to try their cases against [the manufacturer] and the [exonerated defendant] simultaneously"; and the Court's ultimate holding was based on the fact that plaintiff's "cause of action against the [exonerated defendant] was not affected by the joinder or the subsequent removal of [the manufacturer] as co-defendant, but rather remained separate and independent throughout the proceedings." *Id.*, 503 Pa. at 479–480, 469 A.2d at 1041.

The case at bar is significantly different than *Meyer* in that here there were not separate and distinct causes of actions. To the contrary there were only joint and several causes of action stated against all defendants simultaneously. In this regard the comments of Mr. Justice Zappala in his concurring opinion in *Meyer* are germane, to wit: "this appeal may have mandated a different result if there existed a claim based on joint or several liability." Mr. Justice Zappala further emphasized that the plaintiffs in *Meyer* had filed a complaint "with alternative claims for recovery." *Id.*, 503 Pa. at 481, 469 A.2d at 1041 [4].

Therefore, because the issue in front of the jury was or should have been the cumulative negligence of all defendants, the Superior Court had no alternative but to order a new trial as to all defendants once it had ruled that one of the defendants had been erroneously dismissed. *See Elder v. Orluck*, 511 Pa. 402, 515 A.2d 517 (1986). Moreover, contrary to appellants' assertions, the actions of the Superior Court will not always require a new trial for an exonerated defendant whenever a joined defendant has

**4.** It appears that defendants here are the victims of their own decision not to have the plaintiffs' counts more clearly delineated. This could have been accomplished by the filing of preliminary objections asserting that plaintiffs had failed to separate their causes of action under Pa.R.Civ.Pro. 1020. However, having failed to do so, the matter was tried as if the defendants were joint tortfeasors and appellants' assertions regarding the separateness of the causes of action are irrelevant to the posture of this case.

been erroneously dismissed; a new trial will only be required in those cases where the erroneously dismissed defendant was alleged to have been jointly liable.

Accordingly, the order of the Superior Court is affirmed and the case remanded to the Court of Common Pleas of Allegheny County for a new trial.

FLAHERTY, PAPADAKOS and CAPPY, JJ., concur in the result.